## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| WILLIAM SANDRIDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 04-00682-CV-W-GAF |
| | ) |
| MARILYN DONATELLO, et al., | ) |
| | ) |
| Defendants. | ) |

### ORDER

Presently before the Court is a motion to dismiss or, alternatively, motion for summary judgment (Doc. 26) submitted by Defendants Marilyn Donatello ("Donatello") and Dawn Hatterman ("Hatterman") (collectively as "Defendants"). Plaintiff William Sandridge ("Sandridge") has filed claims against multiple defendants alleging violations of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution. Defendants contend that Sandridge's claims against them should be dismissed because they are barred by the Rooker-Feldman doctrine, res judicata, collateral estoppel, qualified immunity and official immunity. Sandridge has opposed the motion. For the following reasons, the Defendants' motion is hereby GRANTED.

**I.  Standard**

A motion to dismiss is the proper method to test the legal sufficiency of the complaint. Schuer v. Rhodes, 416 U.S. 232, 236 (1974). The Federal Rules of Civil Procedure provide that a party may move to dismiss a cause of action if the party believes that the court lacks subject matter jurisdiction over the controversy. Fed. R. Civ. Pro. 12(b)(1). Additionally, the Rules allow a party to move to dismiss for the

1

failure to state a claim upon which relief may be granted. Fed. R. Civ. Pro. 12(b)(6). A motion to dismiss a complaint for failure to state a claim should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. Schmeddling v. Tnemec Co., Inc., 187 F.3d 862, 864 (8th Cir. 1999). A district court must assume all facts alleged in the complaint are true. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). The complaint must also be construed liberally in the light most favorable to the plaintiff. Id. Thus, the Court will dismiss the claims against the Defendants if it is found that the Sandridge has failed to state a claim upon which relief may be granted or the Court concludes that the dispute between the parties is not one over which the federal courts have jurisdiction.

## II.    Facts

The present action stems a dispute over the payment of a few dollars in exchange for the forwarding of college transcripts. Based upon that dispute, several state court cases were filed by Sandridge in Small Claims Court of Clay County, Missouri against Maple Woods Community College ("Maple Woods"). Sandridge had enrolled in and completed certain classes at Maple Woods. During the period in question, Donatello was the Dean of Student Services at Maple Woods and Hatterman was the Registrar.

On March 7, 2000, Plaintiff submitted a request to have his transcript forwarded to the University of Missouri-Kansas City ("UMKC"), a service which required a payment of $2.00. Sandridge paid the $2.00 for this initial request. The address used in making the request was 625 NE 39th Terrace, Kansas City, Missouri, 64116. Maple Woods records at the time had Sandridge's address listed as the same. Maple Woods forwarded the first transcript, for which Sandridge had paid, to UMKC on March 7, 2000. Maple Woods learned that UMKC had received the transcript on March 9, 2000.

Additionally, the submitted form by Sandridge requested that two additional transcripts be

2

forwarded to UMKC in the future, one after semester grades were posted and one after his degree was posted. Pursuant to Maple Woods policy and regulations, additional transcripts cost $2.00 each. Sandridge did not pay the additional $4.00 in fees.

Around this time, UMKC had received Sandridge's application for the 2000 summer semester and had accepted him pending the receipt of his final transcript from Maple Woods listing his degree. In May of 2000, Maple Woods posted Sandridge's certificate and degree to his transcript. Maple Woods mailed Sandridge's diploma to the address which it had on file in June of 2000 which was 625 Terrace. That mailing came back undeliverable. As a result, Maple Woods advised Sandridge that he would need to pick up his diploma in person.

On August 3, 2000, Sandridge renewed his request to have his transcript sent to UMKC. Pursuant to the request and despite the fact that Sandridge had not paid the associated fee, Maple Woods forwarded a second transcript to UMKC on August 3, 2000. The next day, Sandridge requested that two additional copies of his transcript be sent to UMKC. This request was honored and the two transcripts were sent to UMKC's Arts and Sciences Division, one by mail and one by facsimile.

Later, Sandridge filed four separate state court actions in the small claims court of Circuit Court of Clay County, Missouri, based upon these events. The allegations generally contended that Maple Woods had unlawfully withheld Sandridge's community college transcripts. The first petition alleged "Intentional Breach of Official or Fiduciary Duty," "Intentional Violations of MCC District Regulation," "Breach of Due Process/Interference with Contract," "Failure to Deliver Goods and Services," "Intentional Infliction of Emotional Distress," "Consumer Rights/Student Rights Violations," and "Breach of Expressed Warranty." In his second petition, Sandridge sought relief for "Breach of Official or Fiduciary Duty,"

3

"Failure to Deliver Goods and Services," Breach of Contract/Implied Contract," "Negligence, Justifiable Reliance," "Infliction of Emotional Distress," and "Consumer Protection Law." The third petition alleged "Breach of Implied Warranty," "Unsatisfactory Service," "Negligence, Failure to Graduate in a Timely Manner," and "Justifiable Reliance on Maple Woods advertised Proficiency Consumer Protection." Sandridge's fourth and final petition in state court alleged claims for "Obstruction of an Investigation," "Breach of Implied Warranty," "Breach of Statute (MO) 178.835," "Infliction of Emotional Distress," and "Tampering."

Judge Janet Sutton presided over Sandridge's small claims actions.[1] On April 15, 2003, Judge Sutton dismissed the first petition with prejudice. That same day, Sandridge was allowed to present his case on the remaining three petitions. Both of the Defendants appeared at the trial of those remaining petitions. After hearing the evidence, Judge Sutton entered judgment in favor Maple Woods on Sandridge's three remaining petitions. Rather than filing an appeal from those judgments, Sandridge filed this action in federal court claiming that Judge Sutton conspired with lead counsel for Maple Woods to deprive him of fair trial and various other allegations against Donatello and Hatterman.

### III. Analysis

The Defendants have put forth several arguments which they assert bar Sandridge's ability to bring his case before this Court including the Rooker-Feldman doctrine, res judicata, collateral estoppel, qualified and official immunity. Sandridge's suggestions in opposition are, to say the least, severely lacking in substance with regard to both law and fact in his favor. First, Sandridge made no attempt to controvert

---

[1] Judge Sutton was initially a named defendant in this case. The Court dismissed the claims against Judge Sutton on January 7, 2005. (Doc. 19).

4

any of the material facts set forth by the Defendants and, as a result, all of the Defendants' factual assertions are deemed as admitted for the purpose of summary judgment. Local Rule 56.1(a). Second, Sandridge's suggestions, which comprise all of two pages, fail to address every issue raised by the Defendants save the Rooker-Feldman doctrine. It is the opinion of this Court, however, that the Rooker-Feldman doctrine controls in this case.

Generally, the Rooker-Feldman doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). Rather, review of most state court decisions is vested exclusively in the United States Supreme Court. *See* 28 U.S.C. § 1257; Feldman, 460 U.S. at 486. "The Rooker-Feldman doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). Just as a federal district court may not review state court judgments, they are equally prohibited from "exercising jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." Id. In order to determine whether the Rooker-Feldman doctrine is controlling, the Court must determine what the state court held so that it may be ascertained whether a grant of federal relief would either render void the state court's judgment or effectively overrule its holding. Id. at 493. Clearly, the state and federal claims need not be identical. Id.

In this case, Sandridge filed a complaint with this Court that winds through fourteen counts (numbered I through XII and XIV through XVI) against three separate defendants: Donatello, Hatterman, and Sutton, who, as stated earlier, has already been dismissed. The allegations arise from the very same

5

subject matter as the state court actions and encompass claims such as violations of civil rights and due process (Counts I and XI), breach of or interference with contract (Counts II, III, X, and XIV), "unconstitutional conduct" (Counts VI, V, and VI), seizure (Count VIII), "grand larceny" (Count IX), abuse of process (Count XII), conspiracy (Counts VII and XV), and negligence (Count XVI). Based upon these claims, it is difficult to see how a determination by this Court would not undermine the judgments rendered in state court.

Sandridge attempts to refute the applicability of the Rooker-Feldman doctrine to this case by asserting that it is only applicable to federal claims that actually arose in state court and for which there was a full hearing that resulted in a judgment that was responsive to the issues. In support of this contention, Sandridge directs the Court to Robinson v. Ariyoshi, 753 F.2d 1468 (9th Cir. 1985). Not only was Robinson vacated by the Supreme Court, there is little doubt that Sandridge was afforded ample opportunity to raise his claims in the earlier state court proceeding and, indeed, did raise some of the very same claims that he has asserted in this action. Based upon these facts, this Court finds that Rooker-Feldman doctrine controls with regard to Sandridge's claims in this action. As a result, this Court lacks subject jurisdiction over the case.

### IV. Conclusion

Having concluded that this is not a case over which this Court has subject matter jurisdiction, the Defendants' Motion to Dismiss is GRANTED and all claims against the Defendants Marilyn Donatello and Dawn Hatterman are hereby DISMISSED.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE

6

Case 4:04-cv-00682-GAF   Document 43   Filed 08/12/05   Page 6 of 7

DATED: August 12, 2005 United States District Court